In case such return is made, the motion is granted on payment to the plaintiff's attorney of $200.

---

## WOODGATE *a.* FLEET.

*Supreme Court, Second District; Special Term,* 1856.

PLEADING.—FORMER ADJUDICATION.—COMPLAINT.

Material and necessary allegations upon which the plaintiff properly claims some relief, are not to be stricken out on demurrer, because the plaintiff also claims relief which the court cannot grant him.

Where the plaintiff claiming under a trustee-deed,—*e. g.*, as purchaser of the interest of a *cestui que trust*, claims to have new trustees appointed to execute the trusts, his complaint should show the trust-deed, the facts relating to it which *go to show* how and why the interests conveyed thereby have been limited, and also why new trustees should be appointed.

A decree which contains no express and positive provisions as to the rights of defendants as between themselves, should not be held conclusive on such rights, where the record contains no allegations on the subject of their respective claims.

Form of a complaint to ascertain and declare the rights of adverse claimants to real property, to allow redemption from a mortgage, to restrain foreclosure of a mortgage; and for the appointment of new trustees under a trust-deed to fill the place of trustees who had renounced.

Demurrer to complaint.

The facts upon which the action was brought are fully stated in the complaint, the allegations of which were as follows :

I. That on or about the 4th day of March, A. D. 1834, the above-named defendant, Abraham Fleet, being the owner in fee simple absolute of all and singular the lands hereinafter described, made and executed a certain indenture of trust, dated the year and day aforesaid, between himself, of the one part, and James H. Hackett, Sarah Van Lew, and Warren Cornwall, of the other part, wherein and whereby, in consideration of the love and affection he bore to his wife, Martha E. Fleet, his son, John K. Fleet, and of $100 paid to him, conveyed to the said parties of the second part the aforesaid lands, upon the following trusts, that is to say : To have and to hold, to the said parties of the second part, the several pieces of land in trust as follows, that is to say : to receive the issues and profits thereof, and to apply the same in equal proportions towards the support and maintenance of his said wife, Martha E., and the support and education of his said son, John K., and of any children of the said Abraham and Martha E. which should afterwards be born, with power to the trustees to invest whatever surplus moneys might remain in. their hands, in good and profitable securities, for the benefit of the said wife and children ; and in further trust, upon the arrival of the said John K. Fleet at the age of twenty-one years, to convey to him and the said Martha E. (provided she shall then be sole and unmarried) their respective portions of the said estate, which proportion was to be determined by the number of children which should then be living ; provided, however, that if, upon the arrival of the said John K. at the age of twenty-one years, the said Martha E. should not be living, sole and unmarried, her share or propor-

tion should continue to be held by the said trustees for her and her benefit so long as her husband should live; and as such, trustees should account with her, and pay over to her from time to time such moneys as she might require for a comfortable support; and in case she should not survive her said husband, her share of the said estate should be vested in her heirs; and in trust, further, that the shares of such children as might afterwards be born as aforesaid, should be held for them, until they respectively should arrive at lawful age; and in trust, further, that if at any time before the said John K. should arrive at lawful age, it should, in the judgment of the said trustees, become necessary, they should have power to sell and convey the said estate, or any part thereof, and to execute the necessary deeds of conveyance thereof, and the proceeds of such sale to apply for the benefit of the several parties for whose benefit the said trust is created, in manner as above mentioned and provided; which said deed was acknowledged on the 3d day of June, 1834, and recorded on the 4th June, 1834, in liber F. F. of deeds, page 455, in the office of the clerk of the county of Queens.

And the plaintiff further showeth, that the following lands, with other parcels, were conveyed in said trust-deed, to wit:

[*Here followed a description of the premises conveyed by the deed of trust.*]

II. And the plaintiff further showeth, that the aforesaid trust-deed was made and executed by the said Abraham Fleet with the intention and design of putting his property out of the reach of his creditors, whom he owed at that time; and that said trust was never assented to by James H. Hackett, one of the said trustees named therein; and on or about the 23d day of July, 1835, the said James H. Hackett did renounce, by some instrument in writing, under his hand and seal, the said trust, and refused to accept the same; to which instrument, or to an examined copy thereof, the plaintiff hereby refers; and that the other trustees named therein expressly refused to accept or act under the said trust-deed; and that the said trust-deed was considered and treated by the parties thereto as, and the same in point of law and fact was, invalid, and not binding upon them and that on or about the month of July, A. D. 1835, the said Warren Cornwall and Sarah Van Lew, by a certain deed of re-

nunciation, bearing date last aforesaid, executed on the one part by and between the said last-mentioned trustees, and the other on the part of the said Abraham Fleet, did recite, in substance and effect, that they had never accepted said trust, and they were entirely ignorant of the making and execution of the same at the time it was executed, and did therein renounce and give up said trust, and cancel and annul the same, and did therein release and convey unto the said Abraham Fleet all and singular the lands aforesaid, with other land.

III. And the plaintiff further showeth, that on or about the 25th day of May, 1837, Thomas C. Pinckney recovered against the said Abraham Fleet a judgment in the Supreme Court of Judicature of the people of the State of New York, for $200 debt, and $13$\frac{74}{100}$ D. & C., in which judgment he, the said Thomas C. Pinckney was plaintiff, and the said Abraham Fleet was defendant; which judgment was duly docketed so as to become a lien on lands in Queens county, on the aforesaid 25th day of May, 1837; and on such judgment, a writ of *fieri facias* was issued out of the said Supreme Court, directed to the sheriff of the county of Queens, tested on the 13th day of May, A. D. 1837, and returnable on the second Monday of July thence next ensuing; by virtue of which writ of *fieri facias* the said plaintiff did levy and sell the said property, as hereinafter stated. And the plaintiff further showeth, that the said deed of renunciation was executed, sealed, and delivered by the said trustees to the said Abraham Fleet, and that the said trust-deed was, in point of fact and of law, as he is advised, invalid, because of its being contrary to the intent and express provisions of the act relating to trusts of real estate, and also by reason of its being made in fraud of creditors, and also of its never having been acted upon; and by reason of such invalidity from the causes aforesaid, and by force and effect of the release by the said trustees to the said Abraham Fleet, the said judgment of the said Pinckney was a valid lien on the said property.

IV. And the plaintiff further showeth, that after said deed of renunciation and release was executed as aforesaid, and after the docketing of the said judgment of Thomas C. Pinckney for the amount, and on the day before stated, and the acquiring of the lien on the aforesaid land by virtue thereof, the said Abraham Fleet, together with his said wife, Martha E. Fleet, made,

executed, and delivered to Benjamin Albertson and Thomas Whitson, who were then the loan commissioners for loaning certain moneys of the United States for the county of Queens, their certain mortgage on all and singular the lands before stated, dated the 14th June, A. D. 1837, to secure the repayment to the said loan commissioners, of the sum of $4000, in five years after the said date, with interest at and after the rate of seven per cent. per annum, payable annually, to wit, on the first Tuesday of October in each year thereafter; which said mortgage was entered in a book provided by the said loan commissioners for that purpose, and deposited in the office of the clerk of the county of Queens; to which entry the said plaintiff for greater certainty hereby refers, and the said mortgage was a lien on said lands subsequent to the lien of the aforesaid judgment of Thomas C. Pinckney.

V. And the said plaintiff further showeth, that on or about the 21st day of October, A. D. 1837, he recovered a judgment against the said Abraham Fleet, in the said Supreme Court, for $1329\frac{93}{100}$ debt, and $18\frac{79}{100}$ D. & C., on which judgment was due the sum of $664\frac{93}{100}$ at the time of its entry, besides costs, which said judgment was duly docketed so as to create a lien on the aforesaid lands lying in Queens county.

That on such judgment the said plaintiff issued out of said court a writ of *fieri facias*, directed to the sheriff of the county of Queens, tested the 1st Monday of January, 1838, and returnable on the 1st Monday of May, A. D. 1838, levied upon the interest of the said Abraham Fleet, in the above-described land.

And the said sheriff, under and in pursuance of the said two writs of *fieri facias*, issued as aforesaid, the one on the judgment of the said Thomas C. Pinckney, tested and returnable as aforesaid, and the other on the judgment of the plaintiff last mentioned, on or about the 24th November, 1838, exposed for sale the said lands, with others, at public auction, in due form of law, after due legal notice on that behalf given, and sold the right, title, and interest of the said Abraham Fleet, of which he was seised or possessed on the 25th May, A. D. 1837, and 21st October, A. D. 1837, or at any time afterwards, in the said lands to the said plaintiff, for the sum of $950, he being the highest bidder therefor; and upon such sale, made, executed, and de-

Woodgate *a.* Fleet.

livered to the said plaintiff his certificate of such purchase, in due form of law, which was thereafter, on the same day, duly recorded in the office of the clerk of said county.

That by virtue of such sale and purchase and certificate thereunder, he, the plaintiff, became and was entitled to a conveyance of the said right, title, and interest at the expiration of fifteen months from the time of such sale, unless the same should be sooner redeemed.

And the plaintiff further showeth, that the said lands so sold as last aforesaid, were not redeemed from the said sale; and the said sheriff of the said county of Queens, by deed, bearing date the 24th day of February, A. D. 1840, duly conveyed all the right, title, and interest which the said Abraham Fleet had, of, in, and to the said lands on the 25th day of May and the 21st day of October, 1837, or at any time thereafter, unto the said plaintiff, by his certain conveyance, in due form of law, dated on the day and year last mentioned, duly acknowledged, executed, and delivered to the plaintiff, and on the same day recorded in the office of the county of Queens, on the 24th February, 1840, in liber Z. Z. of deeds, pp. 393, 394, and 395, to which record, or to an examined or certified copy thereof, the plaintiff hereby refers.

VI. And the plaintiff further showeth, that by reason of the said two writs of *fieri facias* so as aforesaid issued, the sale thereunder, the certificate of the sheriff executed and delivered by him to said plaintiff, and recorded as aforesaid, and the conveyance of the aforesaid sheriff under and in pursuance of such executions, he, the plaintiff, became and was vested with all the estate, right, title, and interest of the said Abraham Fleet, which he had in the above-mentioned and described lands and appurtenances on the 25th day of May, 1837, and 21st day of October, 1837, or at any time thereafter; and that by reason of his title acquired as aforesaid, under the Pinckney judgment, his title was superior to and overrode the title or lien of the said loan commissioners, under and in pursuance of their aforesaid mortgage.

VII. And the plaintiff further showeth, that possession of the aforesaid lands having been withheld by the said Abraham Fleet, on or about the        day of April, A. D. 1840, he commenced and instituted a certain action or proceeding in the

aforesaid Supreme Court, against the said Abraham Fleet and Martha E., his wife, in ejectment, for the purpose of recovering the possession thereof. And thereupon Martha E. Fleet, wife of the said Abraham Fleet, John K. Fleet, and the infant children of their said marriage, viz., Melancthon Fleet, Samuel Fleet, and Anne E. Fleet, by Michael P. Holland, their next friend, filed their certain bill of complaint in the Court of Chancery, before the vice-chancellor of the first circuit, against the aforesaid plaintiff, Abraham Fleet, James H. Hackett, Sarah Van Lew, James Herriman, and George D. Coles, praying, among other things, that the aforesaid trust-deed should be considered in force and binding upon the parties, and that the said trust should be carried into full force and effect, and new trustees appointed, and that the plaintiff should be perpetually enjoined and restrained from prosecuting his aforesaid action of ejectment. In which said bill of complaint it was charged and alleged, that he, the plaintiff, only claimed title to the said premises by virtue of the sheriff's deed, founded on the sale under an execution issued under the plaintiff's judgment, recovered as last aforesaid, and not under the execution under the Pinckney judgment; and that by reason of the said title so alleged in the said bill of complaint, being under a judgment after the execution of the mortgage hereinafter mentioned, it was pretended and set up that the plaintiff's title, under his sheriff's deed, was in fact subsequent to and subject to the lien of the said mortgage; and thereupon a temporary injunction, restraining the plaintiff from proceeding in his said suit of ejectment, was granted.

And to such bill of complaint the said plaintiff appeared and answered, setting up his title under the sheriff's deed, as acquired under the sale on the execution issued on the plaintiff's judgment, and not the Pinckney judgment. The defendants, Herriman and Coles, interposed their answer, generally claiming a lien on the said premises under and by virtue of the said mortgage to them, as the loan commissioners. The other defendants suffered the bill to be taken as confessed; and such proceedings were thereupon further had in the said suit, and before the assistant vice-chancellor of the first circuit, that on or about the 22d day of March, A. D. 1843, by the judgment of the said Court of Chancery, adjudged and decreed that the

aforesaid deed of trust was well executed and proved, and was a valid and good trust for the joint lives of the complainants, Martha E. Fleet and John K. Fleet, and as to a moiety of the rents and profits of the real estate in the said deed of trust conveyed for the life of the survivor of them, and that the trusts thereof, to that extent, be carried into execution, and that the said deed of trust to be void upon the death of either of the said Martha E. or the said John K. Fleet, for a moiety of the said rents and profits, and upon the death of both of them wholly. And that the deed of release or renunciation in the previous part of this pleading set forth was null and void; and that the injunction granted against the defendant, John H. Woodgate, on the filing the bill in the said cause, be made perpetual during the period of the joint lives of the said Martha E. and John K. Fleet, and during the life of the survivor of them for a moiety, as above expressed and set forth; that new trustees or trustee be appointed to perform the trusts in said deed to the extent above declared, under the direction of this court, in the place of the trustees named in said deed; that the mortgages upon part of the premises in said deed mentioned, and another mortgage on another part of the property to the commissioners of loans as aforesaid, be established as good and valid liens until paid off and discharged.

VIII. And the plaintiff further showeth, that the question of the validity of the said mortgage to the said loan commissioners was not in fact in issue, litigated, or adjudicated upon between said commissioners and the said plaintiff, nor were the priorities of the respective titles acquired by the said loan commissioners under their said mortgage, or by the said plaintiff under the said sheriff's deed, by virtue of the sale under the execution issued on the Pinckney judgment in issue, entered into, examined, or adjudicated upon between the said plaintiff and the said loan commissioners; but the said court, by their decree, merely intended to adjudge and decree that the said trust-deed was valid and effectual for the purposes aforesaid; and that the said plaintiff acquired by his sheriff's deed the reversionary title in and to said premises, after said life-estate ceased and determined, and that the said mortgage to the said loan commissioners was a good and valid lien on the said premises to the extent of the said Abraham Fleet's interest at the time of the

execution and delivery of the said mortgage, and none other; nor was such decree, so far as it provided for said mortgage, intended to, nor could it in any way affect the interest of the said John K. Fleet, under the trust-deed in the said premises, the said John K. Fleet, at the time of the execution of the said mortgage and of the said decree, being an infant. That the said decree has never been enrolled, but contained further directions as to the appointment of one or more trustees under said trust-deed.

And the plaintiff further showeth, that on or about the 6th day of March, A. D. 1854, on the petition of the said plaintiff to the Supreme Court of this State, at a special term thereof, held in and for the county of Queens, at North Hempstead, in said county, before the Honorable Selah B. Strong, one of the justices of the said court, appointed Edward A. Roome and Wessel S. Smith trustees under said trust-deed, in the place and stead of the aforesaid trustees, upon filing their acceptance of their said trust; but as the plaintiff has been informed and believes, the said Smith and Roome refused to act as such trustees, and no others have been appointed as such trustees in their place; but the plaintiff prays, if others are so appointed trustees, that he may have leave to add them as parties to this suit.

IX. And the plaintiff further showeth, that on or about the 8th day of October, 1846, Abraham Fleet paid to Jarvis Jackson and Peter Luyster, at that time loan commissioners as aforesaid, on account of and towards the reduction of the amounts due on the aforesaid mortgage, the sum of $3650, which reduced the amount of said mortgage, and left due thereon only the sum of $350, which said payment, as last aforesaid, made by said Abraham Fleet, was duly indorsed by the said commissioners or their successors in office, on the said mortgage, and the amount thereof due as aforesaid reduced accordingly, on the said 8th day of October, 1846.

X. And the plaintiff further showeth, that John K. Fleet, one of the beneficiaries under the aforesaid deed of trust, after he obtained his majority, and on the 16th day of February, 1853, made and executed, with his wife, Sarah A. Fleet, a conveyance unto the said plaintiff of all and singular his right, title, estate, and interest under and in pursuance of the aforesaid deed of trust, of, in, and to the lands aforesaid, with other

lands, to have and to hold unto the plaintiff forever; which said deed contained the usual full covenants of warrantee, seisin, and quiet enjoyment for further assurance, and was executed for the consideration of $500, paid by the said plaintiff to him, which consideration was a valuable one, and what the same was reasonably worth at that time; which deed was duly acknowledged on the day and year aforesaid, and delivered unto the said plaintiff, and was recorded in the office of the clerk of the said county of Queens, on the 16th day of February, 1853, in liber 103 of deeds, p. 444, to which deed, or an examined copy of the record thereof, the plaintiff hereby refers. At the time of which said conveyance he, the said plaintiff, supposed, in good faith, that there was only a balance left unpaid on the said mortgage to the said loan commissioners of $350; and acting under such impression, parted with his aforesaid money to the said John K. Fleet.

And the plaintiff saith, that by virtue of the said last-mentioned conveyance, he became and was seised of the undivided moiety of the said lands during the continuance of the said two lives of Martha E. Fleet and John K. Fleet, and of the life of said John K. Fleet, in addition to his aforesaid title under the sheriff's deed, as aforesaid.

XI. And the plaintiff further showeth, that the aforesaid loan commissioners, James Herriman and Benjamin Rushmore, have advertised the aforesaid pieces and parcels of land for sale, under their aforesaid mortgage, on the first Tuesday of February, 1855, ensuing, at the court-house at North Hempstead, in said Queens county, claiming and insisting that the whole amount of the said mortgage is due thereon, with interest, amounting to $26.06; and intended to put up for sale and to convey unto the highest bidder on said sale the fee simple estate in the said lands, and claimed that they have a good right to do so; and the said loan commissioners claim, that by such conveyance they will utterly and entirely bar and foreclose any reversionary right, title, or estate of the plaintiff, as well as the right, title, and estate conveyed unto him by the aforesaid conveyance of the said John K. Fleet and wife; and the said defendants, James Herriman and Benjamin Rushmore, as such loan commissioners, claim that there is due on their aforesaid mortgage the principal amount thereof of $4000, with interest thereon,

amounting to $26.06 ; and they claim and insist that they have a right to give a good and valid conveyance of the said lands, in fee simple absolute, to such highest bidder; and they further claim and insist, that their said mortgage is a prior lien on the premises aforesaid, and has a superior equity to the said judgment of the said Thomas C. Pinckney, under which the plaintiff claims title ; and they claim and insist, that if the plaintiff acquired any right under the said sheriff's deed, or under the conveyance of John K. Fleet and wife, those rights were subsequent to the rights of the said loan commissioners under their said mortgage ; and the plaintiff therefore alleges, that by reason of the doubts and confusion thrown about the respective said priorities of the titles under which he claims, and the lien under which the said loan commissioners ,claim the effect and result of all the said proceedings for a sale thereunder, is to impair, hinder, and obstruct the title of the said plaintiff.

XII. And the plaintiff further showeth, that as the grantee of the life-estate of the said John K. Fleet, and for the purpose of perfecting such title as he acquired under and by virtue of the said conveyance from the said John K. Fleet, to buy his peace from said inequitable act, and for no other purpose whatever, on the 11th day of December, 1854, he was willing to suffer a loss, and he therefore tendered to the said defendants, Herriman and Rushmore, loan commissioners as aforesaid, a sum in gold amply sufficient to pay off and discharge the aforesaid balance of $350 left unpaid and due on said mortgage, with the arrears of interest thereon, and also the interest to the 1st day of October, 1855, as required by law, together with the expenses of advertisement and proceedings for sale ; which sum so tendered was admitted by the said Herriman to be sufficient for that purpose ; but they refused to receive the same unless the whole of the said money originally secured to be paid unto them by the said mortgage, was paid unto them, with arrearages of interest ; whereas, in fact and in truth, the plaintiff charges that there was due on the said mortgage only the sum of $350, and interest for about a year past; which sum he has always been and is willing and ready to pay, in order to buy his peace, and be rid of the perplexities and annoyances to which he has been subjected by reason of the said transaction.

XIII. And the plaintiff further showeth, that the defendant,

Abraham Ayers, claims and insists that he has paid to the said loan commissioners the said sum of $3650, with arrearages of interest, and has instituted some proceedings in some court of law, for the purpose of procuring the sale of the said land by the said commissioners, under said mortgage, and to be entitled to the benefit of the said payment; and that under and in pursuance of such proceedings so instituted by the said Ayers, the said loan commissioners are proceeding with their aforesaid proceedings for sale, and claim the amount originally secured to be paid by the said mortgage, to be due as aforesaid ; but the said plaintiff saith, that he has been no party to said suit or proceedings, and the whole proceedings as to him and his rights to the said land are without jurisdiction and void.

Wherefore the plaintiff prays relief in this, to wit:

I. That it may be determined and decreed what the respective priorities, equities, and rights are, as to each other, of the title he has acquired under his aforesaid sheriff's deed and conveyance of Fleet and wife, and of the rights and liens of the said mortgage of the said loan commissioners.

II. That it may also be determined and decreed how much may be due to the said loan commissioners on said mortgage (in case the court may determine that the same is a lien upon the said land prior to the plaintiff's title) to be paid, and that the plaintiff may be permitted to come in and pay the said money so found to be due as aforesaid.

III. And in case the said mortgage be deemed to be a lien as aforesaid, that the said defendants, Herriman and Rushmore, loan commissioners as aforesaid, may be decreed to satisfy said mortgage on payment of the sum which may be found due as aforesaid.

IV. That the defendants may be restrained and enjoined from further proceeding with their aforesaid proceedings to foreclose said mortgage by sale of said property.

V. And that the said Ayers may be enjoined and restrained from further action in his aforesaid proceedings or action in court, relative to the amount claimed by him to have been paid on said mortgage, and that he may interplead and settle in this suit his rights and equities, or claims, if any he has.

VI. And if the said loan commissioners be allowed to proceed

with their said sale, then it be decreed by this court what estate, right, title, or interest to sell.

VII. That new trustees be appointed under said trust-deed, and that such trustees be let into the possession of the said premises, and to manage, sell, or lease the same, and to account to the plaintiff from time to time for his shares of the rents and profits of the said premises, acquired under and by virtue of the conveyance to him by John K. Fleet and wife as aforesaid, and until the appointment of such trustees, that a receiver be appointed of the said premises during the pendency of said suit.

And that the plaintiff may have such other or further relief in the premises as may seem meet to the said court, with his costs to be adjusted.

The defendants, Herriman and Rushmore, the loan commissioners, demurred as follows :

The said defendants, James Herriman and Benjamin Rushmore, commissioners aforesaid, demur to so much of the plaintiff's complaint herein as seeks to inquire into, controvert, and have determined in this action the respective priorities, equities, and rights of the plaintiff, and of these defendants, as such commissioners, as to the title the plaintiff acquired under the sheriff's deed, in the complaint mentioned, to the premises in question in the complaint set forth, and as to the rights and liens of the said two mortgages in the complaint mentioned, to the commissioners for loaning certain moneys of the United States, of the county of Queens, upon said premises, at the time the decree was made in the complaint mentioned, before the assistant vice-chancellor of the first circuit in the chancery suit therein also mentioned, and as seeks to contest and question the validity and priority of said liens over the plaintiff's claims and interests therein, and as to so much of said complaint as seeks to impeach and set aside the deed of trust, and to establish the deed of release in the complaint mentioned, and as seeks to open said decree as to those matters.

I. Because it appears upon the face of the complaint; that in said chancery suit, the said Martha E. Fleet, wife of the said Abraham Fleet, John K. Fleet, and the infant children of the said Abraham and Martha E. Fleet, viz., Melancthon Fleet, Samuel Fleet, and Ann E. Fleet, by Michael P. Holland, their

next friend, were complainants, and the said John Woodgate, Abraham Fleet, James H. Hackett, Sarah Van Lew, and James Herriman and George D. Coles, then commissioners as aforesaid, were defendants. That said chancery suit was commenced and determined long before the plaintiff's action herein, and that all those matters above demurred to were in said chancery suit comprehended and questioned, and ought to be determined in said former suits; and that a decree was made in said chancery suit before the assistant vice-chancellor, on or about the 22d day of March, 1843, establishing and decreeing the rights and equities of all the parties to said suit, as to all those matters, and wherein all those matters ought to be passed upon and determined.

II. Because, if this action is allowed to proceed as to those matters, the defendants will be liable to answer again concerning the same matters, which are comprehended and ought to be determined in said former suits.

III. Because said chancery suit and said decree appearing on the face of the complaint, and it nowhere appearing thereon that said decree has in any manner been modified, altered, vacated, or reversed, the plaintiff is not entitled to bring an original suit to try again those same matters.

IV. Because it appears, on the face of the complaint, that there are other persons having an interest in the questions proposed to be inquired into, who ought to be made parties to this action, viz., Melancthon Fleet, Samuel Fleet, and Ann E. Fleet, wherefore the defendants insist that the complaint, as to all those matters, should be dismissed, with costs.

*D. McMahon* and *John A. Lott,* for the plaintiffs.

*W. S. Smith,* for the defendants.

BIRDSEYE, J. (After briefly stating the parts of the complaint demurred to).—I shall take up the second portion of the demurrer first.

If there were any thing of the kind here alleged in the complaint, if the plaintiff did seek to impeach and set aside the trust-deed, and to establish the deed of release mentioned in the complaint, and to open the decree as to those matters, I think the demurrer would be well taken. But I cannot, on a

somewhat careful examination of the complaint, find any thing to warrant the objection. On the contrary, the plaintiff claims to have purchased from John K. Fleet the interest he took under the trust-deed, as established by the decree in the chancery suit. As such purchaser, he contests the priority of the mortgage to the loan commissioners, over the estate derived by John K. Fleet, under the trust-deed, and then conveyed to the plaintiff. Instead of seeking to impeach and set aside the trust-deed, he claims under it, he affirms it, alleging it to be valid, and that he has the rights decreed to John K. Fleet by the decree in the chancery suit, he comes, asking to have those rights declared to be prior to the lien of the loan commissioners' mortgage, or if not prior, then he asks to redeem from that mortgage, by paying what is due for principal, and interests, and costs, and to be allowed then to hold the premises free from the lien of that mortgage.

This part of the demurrer must therefore be overruled.

As to the other portion of the complaint, demurred to.

It is now abundantly settled, that it is not ground of demurrer to a pleading, that the party claims judgment for a greater sum, or asks for a more extended relief than even by his own showing he is entitled to recover. If the parts of the complaint objected to are material and necessary allegations upon which the plaintiff properly claims some relief, they cannot be stricken out by this demurrer, because the plaintiff has gone too far in his prayer for relief, and has asked what the court cannot grant him. The plaintiff, as the purchaser of John K. Fleet's interest in these lands, claims to have new trustees appointed to execute the trusts specified in the trustee-deed. To obtain that relief, he was bound to show the nature and extent of his own interest in the trust property, and also how the trust was created. That is, he was required to state the trust-deed and all the facts relating to it, which go to show why and how the interests conveyed by the trust-deeds have been limited and made less extensive than the terms of the deed would indicate, and also why new trustees should be appointed.

This requires that he should set forth the renunciations of the trustees originally named in the deed, the suit in chancery brought to establish that deed, the result of that suit, and so much of the proceedings therein as may be material to the

comprehending of the decree and the history of the trust-fund since that time. These portions of the complaint certainly include much the larger part of the allegations objected to by the demurrer, and being conceded by the demurrer, they entitle the plaintiff to have new trustees appointed, and to have a receiver during the pendency of the action. But I think the plaintiff well warranted in setting forth in his complaint the facts relative to the priority of John K. Fleet's interest under the trust-deed over the lien of the loan-commissioners' mortgage. I cannot see from the complaint that the decree in the former suit did dispose absolutely and fully of the question of priority; and the same is true, I think, of the question of priority between the plaintiff's title under his sheriff's deed, and the lien of the mortgage to the loan commissioners. Neither the frame of the pleadings in the chancery suit, nor the relief prayed for, nor the terms of the decree as set forth, seem to me to warrant that the loan commissioners by that decree obtained any priority over the *cestui que trust*, John K. Fleet, or over their co-defendant, the present plaintiff.

The facts out of which the suit grew, are briefly these : Abraham Fleet being the owner, in fee, of the lands in question, in March, 1834, conveyed them to trustees for the benefit of his wife Martha, and his son John K., and such other children as there might be of his marriage. Soon after, one of the trustees by deed renounced the trust, and refused to accept it. In July, 1835, the other two trustees by deed renounced the trust, gave up the trust estate, cancelled and annulled the trustees' deed, and reconveyed the lands to A. Fleet. In May, 1837, Pinckney recovered judgment against Abraham Fleet, and in October of the same year, Woodgate, the present plaintiff, also recovered judgment against Fleet. On these two judgments, Fleet's interests in these lands were sold by the sheriff, were bid off by Woodgate, and not being redeemed, were conveyed to him by the sheriff. Intermediate the two judgments of Pinckney and Woodgate, and on the 14th of June, 1837, A. Fleet and wife borrowed $4000 of the loan commissioners of Queens county, and gave them a mortgage of the same lands to secure its payment. Under that mortgage the loan commissioners now claim. In April, 1840, after obtaining the sheriff's deed, Woodgate brought ejectment for these lands, claiming thereby, as had

been admitted by the trustees, and by Fleet and his wife, that the trust-deed was wholly void.

At this time the beneficiaries under the trust-deed interposed for their own protection. They were the wife of Abraham Fleet, his son, John K. Fleet, and the three younger children of that marriage. All the four children being infants, they filed their bill, and made the defendants therein, Woodgate, Abraham Fleet, the trustees named in the trust-deed, and the loan commissioners. The object of the bill was to have the trust-deed declared to be in full force and binding, and to have the trusts carried into effect, and new trustees appointed, and to have Woodgate perpetually enjoined from prosecuting his eject-ment suit.

That issue was tendered by the bill. It is difficult to see how any other issue could arise on such a bill. The *cestuis que trust* were claiming under a trust-deed which purported to convey the whole fee of the land. If the deed was held valid, as they insisted it was, *it cut off all the subsequent encumbrances, no matter when recovered or what were their respective priorities.* If in such a bill, filed by such parties, a married woman and infants, it had been sought to set up and establish some of the encumbrances subsequent to the trust-deed, and to overturn the rest, there would at least be room for grave suspicion of the good faith of those persons, who, on behalf of parties thus in-capacitated, conducted the suit. But there is no ground for such suspicion, so far as can be gathered from the complaint in this case; the bill in the former suit did nothing but to claim that the trust-deed was in full force and effect, and should be carried into operation, and that new trustees should be appointed to administer the trusts; and as Woodgate's ejectment would, if it proceeded, take away the entire trust-estate, an injunction was prayed for to restrain him.

The issue thus tendered was accepted. The loan commis-sioners interposed their answer generally, claiming a lien on the premises under and by virtue of the mortgage by Abraham Fleet to them as loan commissioners.

Woodgate answered, claiming title under the sheriff's deed to him. Neither of them claimed any priority over the other, or set out any facts on which to base any such claim. Had they spread facts on the record, and sought to litigate in that suit

their claims between themselves, it is at least doubtful if they would have been permitted to do so. The proper method to settle that controversy, was by suit between them; but when the record contains no allegations whatever by these defendants on the subject of their respective claims to priority, I entertain no doubt that the decree should not be held conclusive as to these priorities. Certainly it should not be made so by any implication or construction; nothing but the most express and positive provisions should have such an effect, and I can find in the decree nothing to warrant the conclusion that the court did pass, or intended to pass upon any thing but the rights of the complainants. The trust-deed was to a certain and limited extent declared valid, and ordered to be carried into effect. During the continuance of the trust-estate thus declared to exist, Woodgate. was restrained from prosecuting his ejectments for the lands thus subjected to the trusts.

But the very terms of the decree awarding the injunction, which limited it to the joint lives of the *cestuis que trust* and the life of the survivor, imply that when that limitation had expired, he was to be at liberty to proceed, and substantiate by his suit whatever rights to the lands he might have acquired by his sheriff's deed. The provision that the mortgage to the loan commissioners was established as a good valid lien until paid off and discharged, is at least singular. If it was intended to give that mortgage priority over the interests conferred on the *cestuis que trust* by the trust-deed, it is liable to grave suspicion.

I see no grounds for reaching that result. How could it have been done but by some negligence or collusion on the part of those who represented the infant plaintiffs. But the language of the decree does not compel me to resort to that explanation. It can be construed to mean, that the mortgage *was a good and valid lien on such rights as the mortgagor possessed in the lands at the date of the mortgage.*

Those rights, it appears from other parts of the decree, were the reversion after the two life-estates of the mortgagor's wife and son. The rule of a benignant construction " *at res magis valeat quam pereat,*" should apply as well to a judgment or decree of the court, as to the deed, or agreement, or statute which may be construed by that decree.

I must therefore hold, that upon the statements of it in the

complaint, the decree in the former suit did not determine the rights and equities as between themselves, of Woodgate, and the loan commissioners, and did not declare that mortgage entitled to priority over Woodgate's title. This suit does not call on the commissioners to answer again as to matters comprehended and determined in the former suit, nor does it seek to try again the matters tried in that suit.

The fourth ground of the demurrer, the non-joinder of the three other children of Abraham and Martha Fleet, cannot be sustained. It appears that those children had no claims or interests whatever under the trust-deed, and the decree in chancery so declared.

The demurrer to that portion of the complaint is therefore overruled, with costs.*